UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARINA ELAINE CLARK, | No. 1:19-cv-01587-GSA |
| Plaintiff, | |
| v. | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | **(Doc. 21)** |

I.      **Introduction**

Plaintiff Sarina Elaine Clark ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 18, 21, 23.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

II.     **Procedural Background**

On September 11, 2015 Plaintiff filed an application for supplemental security income claiming disability due to fibromyalgia, severe depression and anxiety, prolapsed uterus and bladder prior to hysterectomy, rotator cuff tear, chronic thoracic spine and lower back pain, spinal stenosis and neuropathy, osteoarthritis, chronic fatigue syndrome, bulging discs in neck, and chronic muscle spasms.  AR 67–68.  The Commissioner denied the application initially on March 30, 2016, and on reconsideration on August 18, 2016.  AR 67–81, 82–99.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 6 and 9.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on June 4, 2018.  AR 34–66.  Plaintiff was represented by counsel at the hearing.  AR 34. On January 10, 2019 the ALJ issued a decision denying Plaintiff's application.  AR 15–26.  The Appeals Council denied review on September 7, 2019.  AR 1–6.  On November 6, 2019 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.   Factual Background

#### A.   Plaintiff's Testimony

Plaintiff (born May 1970) had previous work experience as a cafeteria aid at an elementary school, as an employee at target, a secretary at MDF service, an associate at CVS, self-employment at a nail salon, and taking inventory of goods at mini marts for Pro Inventory Auditing.  AR 42–44. She did not lift more than 10 pounds.  AR 44.  She attended some college and completed manicurist training.  AR 45.  She stopped working as a manicurist because she became allergic to the product. AR 45.  She experienced memory deterioration which had gotten worse in recent years, though she did not undergo any testing.  AR 45–46.

She lived in a one-story house with her husband, three adult children, one minor child and her father.  AR 46.  She cooked occasionally but nothing that took a lot of time.  AR 47–48.  She could not stand in one place for more than 30 minutes due to pain in her back, legs, neck and shoulders.  AR 48.  She grocery shopped using a motorized cart with her children accompanying her to do the heavy lifting and bagging.  AR 48.  She would have difficulty lifting and/or moving a container of milk off of a table in front of her with her right arm.  AR 48–49.  She could reach out in front of her to pick up something light, like a paper or a pen depending on the angle, but she had trouble reaching up.  AR 50.  She went to her son's football games.  AR 50.  Often she would leave the game early or not go at all.  AR 52.  She could sit on a bench for 30 to 45 minutes before standing.  AR 52.  She didn't go to parent/teacher conferences or other school activities because being in confined spaces around a bunch of people triggered her anxiety.  AR 51.  She drove when necessary and drove herself to the hearing about 30 miles from her home.  AR 51.  She would be uncomfortable driving 60 miles.  AR 51.

Her pain was present all the time.  AR 53.  Her average level of pain was a 7 out of 10 with

medication.  AR 53.  She was in bed all day every day.  AR 54.  Her neck and back pain travelled throughout and was accompanied by a burning and numbing sensation.  AR 54.  Her fibromyalgia was first diagnosed following a trigger point exam in 2011.  AR 55.  She underwent another trigger point exam recently.  AR 55.  She was recently prescribed Lyrica for fibromyalgia.  AR 55.  The only other treatment she had received for fibromyalgia was one prescription for Cymbalta, which caused an allergic reaction.  AR 55.  She had fibromyalgia flare ups once a month causing her to be bed ridden for seven days.  AR 55.

Her concentration and memory issues had progressed to the point where she could not remember what she was doing or looking for.  AR 55.  She relied on weekly pill bottles and phone reminders to take medication and attend appointments.  AR 57.  She could focus on a movie for 15 to 20 minutes but couldn't recall what happened if asked.  AR 57.  Her children did the chores.  AR 58.  She experienced migraines three to four times a week at a pain intensity of 9 out of 10, which lasted about three hours requiring her to lay in a dark room with no noise.  AR 58.  Her irritable bowel syndrome was controlled with medication.  AR 59.  Her small fiber neuropathy affected her feet and had started moving into her upper extremities.  AR 60.

### B.   Vocational Expert

The ALJ questioned the VE regarding a hypothetical claimant with Plaintiff's vocational profile who could perform a range of light work with the following limitations: occasionally perform postural activities, occasionally reach above shoulder height with her right upper extremity but never reach overhead, never work in extreme cold or humidity, and would be limited to simple and routine tasks.  AR 61–62.  The VE testified that such an individual could not perform Plaintiff's past work but could perform other jobs existing in significant numbers in the national economy: routing clerk, marker and cafeteria attendant.  AR 62.  If the individual would need to be reminded to stay on task by a supervisor once per half hour, no work would be available.  AR 63.  If the individual would have two unscheduled absences per month, no work would be available.  AR 64.  If the individual required three unscheduled breaks per day of 10-minute duration, no work would be available.  AR 64.  If the individual was limited to only occasional reaching in all directions with the right (dominant) upper extremity and needed the ability to sit and stand at will, no work would

1   be available.  AR 64.

2   **C.    Consultative Examinations; Opinions[2]**

3   On March 14, 2016, Dr. Van Kirk performed a consultative orthopedic examination of

4   Plaintiff.  AR 588–594.  Dr. Van Kirk reviewed no records other than "a consultation from a chronic

5   pain specialist without a name," who assessed "chronic neck pain with left radiculopathy due to

6   multilevel cervical degenerative disease; cervical disc bulges with central canal stenosis on MRI

7   evidence causing bilateral suprascapular neuralgia."  AR 588.  Dr. Van Kirk noted 25% reduced

8   right side grip strength; ability to squat only halfway; reduced cervical and lumbar spine ROM;

9   pain in cervical spine, right paracervical soft tissues, right shoulder girdle, thoracolumbar junction,

10  and lumbar spine; reduced shoulder abduction, flexion, rotation and extension; absent reflexes in

11  the bilateral brachioradialis and triceps, and no detected reflexes in the bilateral patella and achilles.

12  AR 590–593.  He diagnosed chronic cervical and thoracolumbar musculoligamentous strain/sprain

13  and rotator cuff tendinitis of the right shoulder with possible tear.  He opined that Plaintiff could

14  perform a range of light work: stand and walk for six hours total in an eight-hour day; sit without

15  restrictions; lift 10 pounds frequently and 20 occasionally; and occasionally perform postural

16  activities.  AR 593.  He opined that she had no manipulative limitations with the left arm, and no

17  fine manipulative limitations with the right arm.  AR 593.  As to right[3] arm gross manipulation he

18  opined she could perform occasional reaching and manipulation between 80 and 110 degrees but

19  no overhead reaching or manipulation.  AR 593.  He opined that Plaintiff could not work in

20  extremely cold or damp environments.  AR 593.

21  On July 9, 2018 Dr. Wagner performed a consultative internal medicine evaluation of

22  Plaintiff.  AR 1199–1204.  He reviewed no records.  AR 1199.  He noted decreased ROM in the

23  cervical spine and right shoulder with slightly decreased strength.  AR 1201–02.  He diagnosed

24  thoracolumbar back pain and neck pain consistent with occasional musculoligamentous strain.  AR

25

26  [2] Plaintiff's claims discuss her physical condition, not her mental condition.  Accordingly, the
    factual summary and analysis will focus on the same.

27  [3] As Plaintiff notes, Dr. Van Kirk appears to have erroneously stated "left arm" here, though it

28  seems apparent he meant right arm given that in the prior sentence he identified no limitations on
    the left and his diagnosis pertains to the right arm.

1203.  He diagnosed right shoulder pain and noted a history of rotator cuff injury, but he did not have the imaging studies.  AR 1203.  He indicated that Plaintiff's complaints and findings were typical of fibromyalgia but it was unclear if she met diagnostic criteria.  AR 1203.  He opined that she could perform a range of medium work: stand and walk for one consecutive hour up to six hours a day; sit for one consecutive hour up to eight hours a day; lift and carry 50 pounds occasionally, 20 pounds frequently, and 10 pounds continuously; frequently perform some postural activities and occasionally perform others; occasionally reach overhead on the right, frequently perform other reaching on the right, and frequently push and pull on the right.  AR 1203–1206.

On March 29, 2016, and August 12, 2016 non-examining state agency physicians S. Laiken and A. Khong reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively. AR 76–78; 94–95.  Both opined that Plaintiff could perform a range of light work with some postural limitations and limited overhead reaching bilaterally.  *Id.*

Plaintiff's daughter submitted an email describing her observations of Plaintiff and her limitations, including: that Plaintiff has difficulty lifting objects between 5 to 10 pounds; can't stand to cook for longer than 10 minutes; has difficulty walking, showering, dressing, and bending to pick something up; must shift positions when sitting due to discomfort; can no longer do the things she used to do; requires assistance dressing, cooking, making her bed, putting shoes on, finding clothes, and other minor daily tasks; and is frequently too distracted by pain to follow a conversation.  AR 329.

## IV.    Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.     The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically

determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI.     The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of September 11, 2015.  AR 17.  At step two, the ALJ found that Plaintiff had the following severe impairments:  degenerative disc disease; degenerative changes to left knee; degenerative changes to right shoulder; borderline intellectual functioning; obesity; and fibromyalgia.  AR 17.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 19.  Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC), and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the following limitations: occasional performance of postural activities but no climbing ladders or scaffolds; occasional above shoulder reaching and no overhead reaching with the right upper extremity; no exposure to extreme cold or humidity; and limited to simple and routine tasks. AR 20.  At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could not perform any past relevant work.  AR 24.  At step five, in reliance on the VE's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, to wit: routing clerk, marker and cafeteria attendant.  AR 25.  Accordingly, the ALJ found that Plaintiff had not been under a disability since her application date of September 11, 2015.  AR 26.

## VII.    Issues Presented

Plaintiff asserts three claims of error.  First, Plaintiff contends that the ALJ erred in failing

to provide necessary background information to the consultative examiners regarding Plaintiff's physical impairments, and erroneously relied on her own lay interpretation of the clinical findings which were not furnished to the experts in assessing Plaintiff's RFC.  Br. at 11, Doc. 18.  Second, Plaintiff contends that the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints.  *Id.* at 15.  Finally, Plaintiff contends that the ALJ failed to properly evaluate the third-party witness statement provided by her daughter.  *Id.* at 18.

### A.   Providing Background Information To Consultative Examiners

### 1.   Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

 "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins*, 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

## 2. CE Opinion

Plaintiff contends that the ALJ erred by adopting the opinions of the consultative examiners, Drs. Van Kirk and Wagner, despite the fact that they were not provided Plaintiff's medical records for review. Br. at 13. Plaintiff relies on regulations requiring the agency to provide consultative examiners with "any necessary background information" about a claimant's condition, which some courts have interpreted to mean medical records. *Id.* (citing 20 C.F.R. 404.1517, 20 C.F.R. 416.917). Plaintiff's argument is unpersuasive.

The regulations require "necessary background" information, not necessarily medical records. As Defendant underscores, Plaintiff's interpretation of "necessary background information" under 20 C.F.R. 404.1517 tends to contravene existing Ninth Circuit precedent.[4] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (CE's "opinion alone constitutes substantial evidence, because it rests on his own independent examination . . ."); *Castaneda v. Astrue*, 344 F. App'x 396, 398 (9th Cir. 2009) (unpublished) ("Even assuming Dr. Cunningham did not review Castaneda's October 2003 MRI, the ALJ did not err in considering Dr. Cunningham's report. Dr. Cunningham's assessment rested on his own independent examination of Castaneda and was consistent with the record as a whole."). Although Plaintiff does identify some unpublished district court case law interpreting "necessary background information" to mean medical records, the cases are factually distinguishable and nearly all stop short of affirmatively

---

[4] It's worth noting, however, that Defendant is mistaken to the extent he suggests that the oft-quoted language from *Tonapetyan*, taken in isolation, can justify reliance on a single CE examination and associated opinion at the expense of the overall record. Such a view would contravene other well-established law that the RFC is based on all evidence in the record, not a single examination. *See, e.g*, 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence); *Castaneda v. Astrue*, 344 F. App'x 396, 398 (9th Cir. 2009) (finding that the CE's opinion constituted substantial evidence where his "assessment rested on his own independent examination of Castaneda and was consistent with the record as a whole."); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

holding that an ALJ necessarily commits reversable error by according weight to the opinion of a CE who did not review medical records.

Three of Plaintiff's cited cases involved reversal of an ALJ's decision to adopt the opinion of a CE over the contrary opinion of a treating physician or other examining opinion.  *See* Br. at 13-14 (citing *Turk v. Berryhill*, No. 2:17-CV-00767 AC, 2018 WL 3363738, at *5 (E.D. Cal. July 10, 2018); *Valle v. Astrue*, No. CV 08-4389-MAN, 2010 WL 669100, at *7 (C.D. Cal. Feb. 23, 2010)); *Peacock v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00523-PHX-BSB, 2018 WL 2753151, at *7 (D. Ariz. June 8, 2018)).  In *Turk*, for example, the Court acknowledged Ninth Circuit case law holding that an ALJ can rely on the opinion of a CE when that opinion is consistent with the record as a whole, even when the CE did not review medical records.  The Court nevertheless found that the CE's opinion was not consistent with the record as a whole.  The Court found that, at least with respect to a limitation about which the CE and the plaintiff's treating physician disagreed (such as the need for a cane), it was error for the ALJ to give the CE's opinion greater weight than the treating physician when the CE did not have access to pertinent medical records concerning that limitation:

> The ALJ gave 'substantial weight' to the CE, Dr. Dale Van Kirk, who opined as to plaintiff's limitations following a June 2015 post-hearing consultative examination. In completing his consultative exam, Dr. Van Kirk apparently did not review plaintiff's medical records. Dr. Van Kirk opined that plaintiff does not need a cane, *in contrast to the opinion of Dr. Blando and notes from plaintiff's treating physicians*. Although Dr. Van Kirk's opinion was based on his personal examination, the court agrees with plaintiff that his ultimate recommendations may have been altered had he had access to plaintiff's medical records. *While the Commissioner correctly cites Ninth Circuit case law stating that even when a consultative examiner does not review a petitioner's medical record, the ALJ may rely on that CE where the report is based on the CE's own observations and is consistent with the record as a whole, that principle is inapplicable here.* At least with respect to the issue of the need for a cane, the Dr. Van Kirk's opinion was not 'consistent with the record as a whole. It stands in conflict with treating physician notes and the findings of Dr. Blando. Because Dr. Van Kirk did not have access to or review any of plaintiff's medical records, the ALJ *erred in allowing it to override notes from treating physicians* and giving it such great weight with respect to plaintiff's orthopedic limitations.

*Turk*, 2018 WL 3363738, at *5 (citations omitted) (emphasis added).  Here, by contrast, the CEs' opinions were the only examining opinions of record and there was no contrary opinion at issue.

In another case cited by Plaintiff, the court's conclusion that the CE was not provided "necessary background information" was partially predicated on the CE's own statement that he needed access to the claimant's psychiatric hospitalization records in order to properly evaluate the claimant, records which the ALJ did not provide.  *Pamela E. v. Saul*, No. 4:19-CV-00004-SLG, 2019 WL 6257728, at *13 (D. Alaska Nov. 22, 2019).  Similarly in *Fradenburg*, "both of the medical experts found the record before them inadequate for proper evaluation."  *Fradenburg v. Astrue*, No. CIV S-09-3064 DAD, 2011 WL 1253658, at *6 (E.D. Cal. Mar. 30, 2011).  Here, the CEs made no such statement.

Plaintiff also cites *Ladue*, in which the court found that the ALJ improperly accorded considerable weight to a CE's opinion.  *Ladue v. Chater*, No. C-95-0754 EFL, 1996 WL 83880, at *5 (N.D. Cal. Feb. 16, 1996).  There, the court's conclusion that the CE was not provided necessary background information appeared to be partially predicated on the fact that the CE's notes revealed a misunderstanding about the claimant's medical history.  *See id* (noting that the CE "was aware that Plaintiff was on Elavil but incorrectly guessed that it was for depression instead of arthritis.  This lack of information might have frustrated the purpose of the consultation . . .").  Here, by contrast, there is no evidence that the CE's lack of medical records caused any similar misunderstandings about the nature of Plaintiff's condition or treatment.

Plaintiff also cites *Peacock*, in which the court found that a failure to provide medical records to a CE constituted reversible error.  *Peacock v. Commr. of Soc. Sec. Administration*, 2018 WL 2753151, at *7 (D. Ariz. June 8, 2018).  The court acknowledged defendant's reliance on *Castenada* for the proposition that a CE's opinion can constitute substantial evidence even when the CE does not review medical records.  The court found *Castenada* inapplicable, however, insofar

11

as *Castenada* held that a CE need not *review* medical records, which does not speak to the ALJ's separate obligation to *provide* those medical records, an obligation which the court concluded arose under 20 C.F.R. 416.917, and which the ALJ violated. *Id.* *Peacock* is not binding precedent, and the Court does not find it persuasive insofar as it drew a distinction between the ALJ's duty to provide medical records and the CE's obligation to review them, concluding that the former obligation exists even if the latter does not. It would seem incongruous to hold that an ALJ commits reversible error by not providing records to a CE when, as *Castenada* holds, the CE need not review them.

Next, Plaintiff makes a factual argument as to why the lack of access to pertinent records undermined the reliability or persuasiveness of the CE's opinions. Plaintiff contends that the CEs did not have evidence that would be critical to an assessment of the severity and limiting effects of Plaintiff's impairments, including "imaging of the right shoulder revealing degenerative changes, tendinopathy, and edema in the right shoulder joint (Ar. 571), imaging of the left knee revealing osteoarthritis changes (Ar. 532), multiple MRI and x-rays of the cervical spine revealing disc bulges, stenosis, neuroforaminal narrowing, and facet hypertrophy (Ar. 527, 641, 784), a recommendation for surgery if Plaintiff successfully lost 75 pounds and optimized her medical conditions (Ar. 597), abnormal nerve conduction testing (Ar. 598), and nerve biopsy findings revealing small fiber neuropathy. AR 956, 966."

Plaintiff overlooks that the non-examining physicians did have access to these records at the initial and/or reconsideration levels, save for the pre-application shoulder MRI from September 2014, and the records from LAGS which are addressed below. The non-examining physicians had access to the knee imaging study dated January 2015 (AR 532), two of the three spinal MRIs dated December 2015 and March 2015 (AR 527 and 641), the surgery recommendation dated February 2016 (AR 597), and the abnormal nerve conduction study dated March 2016 (AR 598). *See* AR

71–72, 88–89 (describing review of records from 2015 through July 2016).  Thus, the ALJ did not reach her own conclusions about these records without the aid of a medical expert.  The ALJ appropriately gave corroborative weight to the assessments of the non-examining state agency physicians who reviewed these records, a conclusion which was buttressed by the consistent conclusions of the CEs upon independent examination.  *See Castaneda*, 344 F. App'x at 398 (finding that the ALJ's decision was supported by substantial evidence where the CE did not review the medical records, but the non-examining physicians did).

Plaintiff also contends that the ALJ improperly undertook to interpret clinical findings from LAGS Spine and Sportscare without the aid of a medical expert.  Plaintiff's cited caselaw, however, largely involved an ALJ independently interpreting imaging findings which does not support the notion that examination findings from a pain management and sports care clinic constitute "raw medical data" unsusceptible to a lay understanding.

Finally, Plaintiff contends the ALJ erred in focusing on the normal findings from LAGS while "wholly fail[ing] to acknowledge abnormal nerve conduction testing, positive small fiber neuropathy, or repeated examination findings of reduced range of motion in the cervical spine, positive Spurling test, reduced strength in the right wrist and shoulder, abnormal sensation in the C4-C6 dermatomes, decreased reflexes on the right, pain with right shoulder range of motion, and tenderness to palpation over the biceps tendon, AC joint, and trapezius" as well as "examination of the lumbar spine reveal[ing] abnormal range of motion and pain, positive straight leg raise on the left, positive Patrick test bilaterally, and positive Reverse Thomas test bilaterally."  Br. at 14 (citing AR 915, 925–64, 956, 970–71, 984, 988–89, 993–94, 998–99, 1003–04).  To the contrary, the ALJ's opinion is replete with instances where she acknowledged most of the findings Plaintiff draws attention to from other examinations of record or from LAGS itself.[5]  Thus, to the extent

---

[5] *See* AR 19 (noting "sensory deficit in a cervical spine dermatome, slight motor weakness in the

Plaintiff is contending the ALJ offered a selective interpretation of the record, that contention is not accurate.  Moreover, there is no reason to believe that the examinations or opinions of Drs. Van Kirk or Wagner would have been affected if they had access to records from LAGS, records which established many of the same examination findings that Drs. Van Kirk or Wagner observed themselves.

Thus, the ALJ did not err in according weight to the opinions of the CEs without first providing them medical records for review.

### B.      Plaintiff's Subjective Complaints

#### 1.      Applicable Law

The ALJ is responsible for determining credibility,[6] resolving conflicts in medical testimony and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective

---

right upper extremity, and decrease range of motion in both areas.") (citations omitted); AR 22 (noting that Drs. Van Kirk and/or Wagner reported "cervical spine range of motion at about 50-60% normal and lesser diminution in the lumbar spine," reported "significantly reduced right shoulder range of motion," reported "some reflex deficits,"  reported "limited range of motion in the cervical and lumbar spine and right shoulder on examination" and reported "4+/5 strength in the right shoulder."); AR 23 (noting records from Dr. Pannu at Family Health services reflect "straight leg raising is essentially always listed as positive at 30 degrees," that "there are frequent notations of decreased range of motion in the cervical spine and lumbar spine . . ."); AR 23 (noting records from LAGS reflect "reductions in range of motion in the neck, back, and right shoulder.").
[6] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5

## 2.   Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering.  AR 20.  Thus, the ALJ was required to articulate clear and convincing reasons before rejecting Plaintiff's reported symptoms.  *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).  The ALJ did so finding Plaintiff's allegedly disabling symptoms inconsistent with various medical and non-medical evidence.

First, Plaintiff takes issue with the ALJ's observation that many of her medically determinable impairments did not always prevent her from working, such as obesity and degenerative changes.  At least with respect to her obesity impairment, Plaintiff does not contest

the validity of the ALJ's reasoning.  As to her degenerative conditions, Plaintiff reasonably observes that degenerative conditions, by their very definition, get worse over time.  Thus, the mere fact that those degenerative conditions did not previously prevent her from working does not support an inference that they would never prevent her from working in the future.  Nevertheless, the ALJ observed in the very next paragraph that the objective evidence reflected primarily age-consistent degenerative changes in her back and shoulder, an observation which Plaintiff does not contest.  Although subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Irrespective of whether Plaintiff's degenerative changes previously prevented her from working, the ALJ appropriately observed that objective medical evidence demonstrated primarily age-consistent degenerative changes.

Second, Plaintiff takes issue with the ALJ's observation that she benefited from treatment such as injection therapy and medication.  Plaintiff cites other records she contends establish that her pain was "at best only partially, temporarily abated by treatments."  Br. at 12 (citing AR 968, 1001, 1077).  One of the records Plaintiff cites reflects that her pain was improved by heat, massage, and medications, that the severity of her pain was 5/10 with medication and 8/10 without medication, and that she was receiving the "lowest effective dose of pain medication."  AR 968.  Another record Plaintiff cites reflects pain level 6/10 with medication and 10/10 without.  AR 1001.  The third record reflects that Plaintiff received "more than 50% relief from pain for three weeks" following bilateral lumbar fact joint blocks, after which the pain returned and her doctor scheduled her for additional bilateral lumbar facet joint blocks.  AR 1077.  Although these records do not reflect that treatment completely resolved Plaintiff's pain conditions, the ALJ made no such

16

contention, nor did the ALJ completely disregard her subjective symptomology. Rather, the ALJ accurately observed that Plaintiff benefitted from treatment, and made some accommodation in Plaintiff's RFC for her continued pain. The ALJ limited her to a reduced range of light work with occasional postural activities, occasional above shoulder reaching with the right arm, and no overhead reaching with the right arm. The records cited by Plaintiff do not establish that her pain conditions warranted a more restrictive RFC. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (noting that if the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.).

Additionally, Plaintiff disputes the ALJ's assertion that her subjective complaints are contradicted by the fact that she told Dr. Wagner she cooks, cleans, drives, shops, and performs her own activities of daily living without assistance. Plaintiff observes that "as the ALJ acknowledged, more detailed reports of Plaintiff's activities reveal that, while she performed self-care independently, she often required assistance to complete cooking, cleaning, and shopping." AR 21, 589. Indeed, the evidence regarding her daily activities was mixed. However, the ALJ did not merely provide a generalized statement regarding Plaintiff's daily activities, but canvassed the evidence including Plaintiff's reports to her treating providers, to the consultative examiner, and at the administrative hearing, some of which were conflicting. Though the ALJ made no finding that Plaintiff's daily activities met the threshold for transferable work skills, the ALJ appropriately resolved the conflicting testimony in reaching an RFC that accounted for some pain limitations while not fully embracing Plaintiff's self-reported debilitating pain. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations

were exaggerated."); *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc) (noting that an ALJ appropriately considers inconsistency of the claimant's statements in reaching a credibility determination).

Plaintiff also disputes the ALJ's contention that she was not a candidate for surgery.  As Plaintiff underscores, the ALJ was mistaken.  A treating provider did state that she needed surgery, but that she would have to lose weight and otherwise optimize her medical condition first.  The ALJ erred to the extent she suggested Plaintiff's treatment was conservative, when the record does indeed reflect a recommendation for surgery.  Nevertheless, the error does not warrant reversal as the ALJ identified other independently clear and convincing reasons for discounting Plaintiff's subjective symptomology, as described above.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (citations and internal quotation marks omitted).

### C.    Third Party Report

#### 1.    Applicable Law

"[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify to her condition."  *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993).  Disregarding lay evidence without comment violates the regulatory provision that the Commissioner will evaluate evidence from nonmedical sources.  20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4).  However, "[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  Inconsistency with medical evidence is a germane reason.  *Id.*  An ALJ also provides germane reasons for rejecting testimony when the lay witness's testimony is substantively similar to other subjective testimony that has already been validly rejected.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694

(9th Cir. 2009).

## 2.   **Analysis**

Plaintiff's daughter submitted an email describing her observations of Plaintiff and her limitations, including: that Plaintiff has difficulty lifting objects between 5 to 10 pounds; can't stand to cook for longer than 10 minutes; has difficulty walking, showering, dressing, and bending to pick something up; must shift positions when sitting due to discomfort; can no longer do the things she used to do; requires assistance dressing, cooking, making her bed, putting shoes on, finding clothes, and other minor daily tasks; and is frequently too distracted by pain to follow a conversation.  AR 329.

The ALJ discounted this third-party statement because it did not "comport with the cumulative evidence."  AR 24.  The ALJ accorded it some weight but did not accept it "to the extent [it] suggest[s] work limitations greater than reflected in my residual functional capacity assessment."  *Id.*  Plaintiff contends that the ALJ's explanation "fails to scratch the surface of the analysis required in the regulations."  Br. at 19.  Indeed, the ALJ's direct discussion of the third-party statement was quite brief.  However, the third-party statement largely echoes Plaintiff's own subjective statements, and Plaintiff offers little discussion of what additional information is contained in the third-party report that warranted separate discussion beyond what the ALJ offered throughout the RFC analysis.  *See Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001) ("While the ALJ, in dismissing the family members' testimony, did not specify any inconsistent 'prior recorded statements,' he did note some arguably contradictory testimony *at other points in his decision* . . . He observed, for example, that Lewis jogged, golfed, bicycled, played softball once a week, attended church, occasionally bowled with friends, cleaned, and vacuumed . . . In all, the ALJ at least noted arguably germane reasons for dismissing the family members' testimony, *even if he did not clearly link his determination to those reasons*.) (emphasis added).

19

Because the third-party statement largely echoed Plaintiff's own subjective complaints, the ALJ's analysis of the latter was equally applicable to the former.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

**VIII.   <u>Order</u>**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Sarina Clark.

IT IS SO ORDERED.

Dated:   __**March 22, 2021**__            _____**/s/ Gary S. Austin**_____
                                            UNITED STATES MAGISTRATE JUDGE

20